Minshall, J.
The plaintiff below, Mrs. Osborne, brought suit against the defendants to set aside a deed of her lands, made in 1874, to Comfort Adams, on the ground, as she claims, that she never acknowledged or delivered it. She also asks that a deed made of the same lands by Comfort Adams to George H. Ford, in 1877, be set aside and removed as a cloud upon her title.
She admits having signed the deed to Comfort Adams, but says she was induced to do so by the undue influence of her husband. She also charged collusion between her husband and the grantee and beneficiary of the deed, and that Ford had knowledge of this at the time of the conveyance to him; but of this there was no evidence at the trial, nor of any collusion between Comfort Adams and the husband of the plaintiff. There is no evidence to show any fraud or wrongdoing on the part of either of them. All the fraud, if any, was on the part of the husband of the plaintiff. The deed had been signed by the plaintiff, and was intended as a security for a large amount of money, that was about to be, and afterwards was, advanced, by Comfort Adams, Fitch Adams and others, for the accommodation of the husband of the plaintiff. Some two years afterward Comfort Adams transferred his interest in the property to Ford, and executed to him a deed for the land. The plaintiff relied on the evidence of herself and husband to show that she never acknowledged the deed.
The deed purports to have been acknowledged by the plaintiff before one C. E. Wheeler, a notary public; and the signing and acknowledgment purport to have been witnessed by the notary and one George Preston; the latter had, however, died before the suit was commenced. The notary was called by the defendants, but had no distinct recollection of the matter, beyond remembering that he took the acknowledgment of the deed, which remembrance seems to have been due principally to the fact, that he recognized his signature to *3 the certificate of acknowledgment and as an attesting witness. The defendants offered to show by him that he made it a uniform rule to require the parties to be before him when an acknowledgment was taken, and that he knew of no departure from this rule, though he could not distinctly remember the circumstances of the present case. The offer was refused by the court, on the objection of the plaintiff; though this statement was subsequently made by him in the course of his examination, and without objection.
This court is not now required, nor will it, weigh the evidence in a proceeding in error, though it is all brought before it by a bill of exceptions, for the purpose simply of determining whether the court below erred in its finding of fact. But it may, nevertheless, look into the record to determine whether there is any evidence tending to support the issue; and also, in a civil case, where the issue requires to be supported by clear and convincing proof, and not by a simple preponderance of the evidence, and it is claimed that the rule has been disregarded, the court will look into the evidence for the purpose of determining if the rule has been regarded; and, where the finding of the court below can only be sustained on the supposition that it regarded the law as requiring nothing more than a mere preponderance to support the issue made, may reverse the judgment based on such finding. Potter v. Potter, 27 Ohio St. 84.
In the case of Baldwin v. Snowden, 11 Ohio St. 203, it was held that a regular statutory certificate of acknowledgment of a deed of conveyance, made by husband and wife, is, in the absence of fraud, conclusive evidence of the facts therein stated. In this case it appears that the officer went to the residence of the wife with her husband; but she was in no way informed of his character, nor of the purpose for which he was there, and, though she signed the deed while he was present, her acknowledgment was not, in fact, taken by him. But the grantee had no knowledge of these facts. However, in Williamson v. Carskadden, 36 Ohio St. 664, it was held that a grantor may, even as against an innocent party, show that he never in fact appeared before the officer and acknowl *4 edged the execution of an instrument, though it purports to have been duly acknowledged by him. In both of these; cases the question was presented on a demurrer to the answer of the defendant. Hence the facts as stated in the answer in each case, were admitted, and no question arose as to the degree of proof required to impeach a certificate of acknowledgment. But it is clear, as we think, that where a party, who has in fact signed a deed that purports to be acknowledged in due form of law, claims that the certificate is false, the security of titles and the repose of society require that he should establish the fact by clear and convincing proof; a mere preponderance is not sufficient. Martindale Law of Conveyancing, 224.
The burthen on the plaintiff required her to meet and overcome the evidence afforded by the certificate of the notary, supported by the attestation of the witnesses, that she appeared before him as an officer and acknowledged the deed. It stands to reason that, in the absence of any thing to impeach the integrity of the officer and the witnesses, no slight importance should be attached to such evidence; because it is the evidence of an act done in pursuance of law, and which can be attested and proved in no other way. In other words, it is the evidence required by law of the execution and acknowledgment of a deed.
To say that the taking of an acknowledgment of a deed is a ministerial, and not a judicial act, is simply to say that it may be attacked collaterally 5 it does not impair its value as a certificate made by one acting under authority of law, not only in the matter of taking the acknowledgment, but also in certifying the same.
The person who, with the notary, witnessed the deed, being dead, could not be called; but in such case the genuine attestation of a deceased witness has, in law, the force and effect of a living one, who is called and verifies under oath the truth of his attestation.
Therefore, when the plaintiff rested her case, it might well be questioned whether she would have been entitled to a decree if the defendant had introduced no evidence whatever. *5 She had not called the notary. It is no answer to this, to say that she was not bound to call one who was, or might prove to be, an adverse witness; the failure to call him could not add to the strength of her case. It rested upon her own evidence and that of her husband — both directly interested in setting aside the deed. When the law of evidence was so changed as to permit parties to testify in their own behalf, the infirmities of interested testimony were not overlooked by the legislature ; it was simply removed as a ground of incompetency, and left to affect the credibility of the witness. And the trier of fact who disregards what human experience has shown to be a common infirmity of all interested testimony, is very likely to be deceived.
But the testimony of the husband was affected, not only by his interest, but also by his admitted turpitude. His evidence shows one of two things to be true: Either he was guilty of perjury in the testimony he gave at the trial, or he had been guilty of a felony in obtaining a large amount of money upon what he knew to be a fraudulent deed. It would be utterly -unsafe to base any judgment upon the unsupported testimony of such a witness.
And the suggestion readily arises at this point, that if he had such control over his wife as to enable him to influence her to do an act against her interest, it would not be any the less effectual when exerted in favor of her interest.
Nor can it be said that the case of the plaintiff was strengthened by the evidence offered by the defendants; on the contrary, candor must, as we think, compel the admission that it was very much weakened.
It was shown that the ink of the signature of the notary and that of Mrs. Osborne was of the same kind, namely, Arnold’s. It is true, as stated, that this ink is in very common use, and that she may have had such ink at her residence, where she says she signed the deed. But it was not shown that she had such ink. If she had, it was for her to show it, and not for the defendants to show that she had not. This may have been an oversight. Nevertheless, the identity of the ink in the signatures was a circumstance of some weight, *6 as it tended to show that she signed the deed at the place where the notary certified the acknowledgment of it.
Again, she testifies that she signed the deed at her residence, no one being present but herself and husband. And he says that after she signed it, he took it to the office of the notary, signed it himself, had it witnessed and acknowledged before the notary, and at once delivered it to Comfort Adams. Now it is evident, that if this be true, then her name should appear to have been written before, and not after his, upon the deed. Yet an inspection of the signatures, shows conclusively that she signed it after he did; for not only does the microscope show, but such is the testimony of the experts, that the tail of the letter “ y ” in her first name “ Mary,” passes over and not under the script in his signature. It is difficult to reconcile this discrepancy in any other than one of two ways: We must assume that she attended her husband and signed the deed after he signed it at the notary’s office, or else, after it had been acknowledged by him he took it to her residence, where she signed it before he delivered it. But either of these assumptions is fatal to her claim; for if she signed the deed after the certificate of acknowledgment had been added, then according to all the authorities, she would be estopped from showing the fact as against an innocent party; and the same is true if she signed it before and in the presence of the notary. Baldwin v. Snowden, supra.
The deed was made in 1874, and at once placed on record. She knew when she signed it, that the object of the instrument was to enable him to get a loan of money. The money —a large amount, was loaned to him. It is possible, but not probable, that she did not know all this; that is, that the deed had been acknowledged, delivered, placed on record, and the money loaned. If she did, it is not consistent with the claim she now makes, that she never acknowledged the deed nor authorized its delivery; a claim, not made until some five years after the transaction had occurred, and after an interest had been conveyed in the property to an innocent third person.
These are some of the circumstances that, in the .opinion of *7 the majority of this court, tend to infirm the evidence on which the plaintiff relies to impeach the certificate of acknowledgment to the deed she admits having signed. They are of such a character as to persuade us that the court below must have erred as to the degree of proof required to impeach a duly attested certificate of acknowledgment to a deed or other instrument.
The fact that the notary was not able to recall all the circumstances conuected with the transaction, after such a lapse of time, does not, in our opinion, impair the validity of his certificate; particularly as he remembers the fact of having taken the acknowledgment, and testifies that he, in no instance took the acknowledgment of an instrument in the absence of the party acknowledging it. It would probably have been more remarkable, if he had been able to recall all the details of the transaction, after such a period of time. In Tooker v. Sloan, 30 N. J. Eq. 394, it was held that the certificate of acknowledginent is not invalidated nor affected by the want of recollection of the officer, as to the transaction; and such is the general view of the law. Martindale’s Law of Conveyancing, 224, and cases there cited, n. 4.
It is to be regretted 'that there is any difference of opinion in the court as to the reversal of the judgment on the ground stated. But it is a matter of too much importance, not only to the parties in this case but to every freeholder in the state, to be controlled by any mere delicacy of opinion.

Judgment reversed and cause remanded to the circuit court for a new trial.